## ORAL ARGUMENT NOT YET SCHEDULED

IN THE

### UNITED STATES COURT OF APPEALS

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

NO. 13-5239

———————————

JAMES GAMBRELL, et al.,

*PLAINTIFFS/APPELLANTS*,

v.

ISAAC FULWOOD, JR., CHAIRMAN
United States Parole Commission, et al.

*DEFENDANTS/APPELLEES.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————

**BRIEF FOR APPELLANTS JAMES GAMBRELL, KENNETH EASTON,
TALIB SHAKIR, JAMES DUNN, AND WILLIAM CARR**

———————————

JASON D. WALLACH
DICKSTEIN SHAPIRO LLP
1825 I STREET N.W.
WASHINGTON, DC 20006
202-420-2200

*Counsel for James Gambrell, Kenneth
Easton, Talib Shakir, James Dunn, and
William Carr*

<u>**CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES**</u>

**I.     Parties and Amici**

A.     <u>Parties and *Amici* in the district court</u>.  The parties appearing before the district court as plaintiffs were:  James Gambrell, Kenneth Easton, Talib Shakir, James Dunn, and William Carr.  The parties appearing before the district court as defendants were: Isaac Fulwood, Jr., Chairman of the United States Parole Commission ("USPC"); Cranston J. Mitchell, Commissioner of the USPC; Patricia K. Cushwa, Commissioner of the USPC; and J. Patricia Wilson Smoot, Commissioner of the USPC.  No *amici* appeared in the district court.

B.     <u>Parties and *Amici* on appeal</u>.  The parties appearing before this Court in this appeal are appellants James Gambrell, Kenneth Easton, Talib Shakir, James Dunn, and William Carr, and appellees who were the defendants in the district court.  The appellees include Chairman Isaac Fulwood, Jr. and Commissioners Mitchell, Cushwa, and Wilson Smoot.

**II.     Rulings Under Review**

This appeal is taken from the June 18, 2013 Memorandum Opinion and Order of Judge Barbara J. Rothstein of the United States District Court for the District of Columbia:  *Gambrell v. Fulwood*, 950 F. Supp. 2d 109 (D.D.C. 2013).  In particular, Plaintiffs appeal the lower court's ruling dismissing the Plaintiffs' *Ex*

*Post Facto* claims[1] and dismissing James Gambrell's First Amendment retaliation claim and claim that the USPC violated his due process rights by acting with vindictiveness.[2]

## III.     Related Cases

This case has not previously been before this or any other court.  There are no known related cases.

---

[1] *See* Memorandum Opinion § III.E; 950 F. Supp. 2d at 123.

[2] *See* Memorandum Opinion § III.C & D; 950 F. Supp. 2d at 121-23.

## TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ..............1

    I.    Parties and Amici ...................................................................1

    II.   Rulings Under Review ............................................................1

    III.  Related Cases .........................................................................2

GLOSSARY...................................................................................................iv

STATEMENT OF JURISDICTION.................................................................1

STATUTES AND REGULATIONS .................................................................1

STATEMENT OF ISSUES FOR REVIEW .....................................................1

STATEMENT OF THE CASE ........................................................................2

STATEMENT OF FACTS ...............................................................................9

SUMMARY OF ARGUMENT .......................................................................18

ARGUMENT ..................................................................................................20

    I.    The District Court Erred in Dismissing Plaintiffs' *Ex Post Facto* Clause Claim ...................................................................................20

    A.   The *Ex Post Facto* Clause Inquiry Applies Equally to the Commission's Practices as to the Statutes and Regulations the Commission Applies .........................................................................24

    B.   As the *Sellmon* Court Recognized, the Commission's Discretion in Parole Decisions Is Not Unfettered....................................................25

    II.   The District Court Erred in Dismissing Mr. Gambrell's Vindictive Prosecution and First Amendment Claims.........................................27

CONCLUSION ...............................................................................................32

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Byrd v. Moseley*, 942 F. Supp. 642 (D.D.C. 1996) ...................................................28

*Caldwell v. Brown*, No. 98-0460, 2003 U.S. Dist. LEXIS 27942 (D.D.C. Sept. 29, 2003) ..........................................................................................................28

*Collins v. Youngblood*, 497 U.S. 37 (1990) ...........................................................20

*Cosgrove v. Thornburgh*, 703 F. Supp. 995 (D.D.C. 1988) ..............................24, 27

*Davis v. Henderson*, 652 A.2d 634 (D.C. 1995)........................................................11

*Fletcher v. Reilly*, 433 F.3d. 867 (D.C. Cir. 2006) ..................................................21

*Gambrell v. Fulwood*
    950 F. Supp. 2d 109 (D.D.C. 2013)....................................................3, 5, 6, 7, 8,
    9, 15, 16, 19, 20, 22, 23, 25, 26, 29

*Gambrell v. Fulwood*, C.A. No. 11-626 (BJR) (D.D.C. filed July 26, 2013) .......1, 7

*Garcia v. Dist. of Columbia*, 1998 U.S. Dist. LEXIS 22130 (D.D.C. 1998) ..........28

*Garner v. Jones*, 529 U.S. 244 (2000) ...............................................20, 21, 24, 26

*Hammonds v. D.C. Bd. of Parole*, 756 A.2d 896 (D.C. Cir. 2000) ..................28, 29

*Marshall v. Lansing*, 839 F.2d 933 (3d Cir. 1988) ...........................................27, 28

*North Carolina v. Pearce*, 395 U.S. 711 (1969)......................................................27

*Sellmon v. Reilly*
    551 F. Supp. 2d 66 (D.D.C. 2008)..................................................2, 3, 4, 6, 7, 8,
    9, 10, 11, 12, 13, 14, 16, 17, 20, 21, 24, 25, 26, 27, 29, 30, 31

*Sellmon v. Reilly*, No. 06-cv-01650-ESH, Docket............................................10, 17

*Sellmon v. Reilly*, No. 08-5408 (D.C. Cir. filed Jan. 29, 2009) ................................4

*United States v. Goodwin*, 457 U.S. 368 (1982)......................................................28

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Art. I, § 9, cl. 3 ........................................................... 18, 20, 1

**STATUTES**

28 U.S.C. § 1291 ................................................................................ 1

28 U.S.C. § 1331 ................................................................................ 1

D.C. Code § 24-204 ....................................................................... 11, 1

Pub. L. No. 105-33, § 11231, 111 Stat. 712, 734-37 (codified at D.C. Code §§ 24-101 *et seq.*) ................................................................... 13, 23

**REGULATIONS**

28 C.F.R. § 2.80(a)(4) (2011) ......................................................... 13

D.C. Mun. Regs. Tit 28, app. 2-1 ................................................... 12

D.C. Mun. Regs. Tit 28, § 204.22 (1987) ...................................... 11

**RULES**

Fed. R. App. P. 4(a)(1)(B) ............................................................ 1, 7

**\*Authorities upon which we chiefly rely are marked with asterisks**

# **GLOSSARY**

| | |
|---|---|
| Board | District of Columbia Board of Parole |
| Commission or USPC | United States Parole Commission |
| 1987 Regulations | Parole guidelines promulgated by the Board in 1985 and published in the District of Columbia Municipal Regulations in 1987 |
| 1991 Policy Guideline | A policy guideline promulgated by the Board in 1991 to define terms and criteria used in the 1987 Regulations |
| 2000 Guidelines | Parole regulations promulgated by the Commission, which are found in Title 28 of the Code of Federal Regulations, and were implemented in 2000 which apply to D.C. Code offenders who became eligible for parole after August 5, 1998 |

## STATEMENT OF JURISDICTION

The district court's jurisdiction over Plaintiffs' complaint was based on

28 U.S.C. § 1331, as Plaintiffs' claims arose under the laws and Constitution of the

United States.  This Court's appellate jurisdiction over the order dismissing

Plaintiffs' complaint rests on 28 U.S.C. § 1291.  The district court dismissed

Plaintiffs' claims by a final order dated June 18, 2013.  Plaintiffs filed a timely

notice of appeal to this Court on July 25, 2013.[3]

## STATUTES AND REGULATIONS

The pertinent statutes and regulations are set forth in an addendum to this

brief.

## STATEMENT OF ISSUES FOR REVIEW

1.     Whether the District Court erred when it dismissed Plaintiffs' claim

that Defendants violated the *Ex Post Facto* Clause of the United States

Constitution when Defendants applied their own parole criteria, and not the criteria

of the District of Columbia Board of Parole in effect when Plaintiffs committed the

crimes for which they are incarcerated, to determine Plaintiffs' parole suitability.

2.     Whether the District Court correctly held that Defendants' discretion

to deny Plaintiffs' requests for parole is unfettered and not limited in any manner

---

[3] Notice of Appeal at 1, *Gambrell v. Fulwood*, C.A. No. 11-626 (BJR) (D.D.C. filed July 26, 2013); *see* Fed. R. App. P. 4(a)(1)(B).

1

by the parole regime and criteria that applied at the time Plaintiffs committed the crimes for which they are incarcerated.

3.    Whether the District Court properly dismissed Mr. Gambrell's claim for Defendants' violation of the First Amendment of the United States Constitution when it determined, as a matter of law, that Defendants did not act vindictively or retaliate against Mr. Gambrell when they denied his parole requests following his participation in the case *Sellmon v. Reilly*, 551 F. Supp. 2d 66 (D.D.C. 2008), and in the case below, and gave him successive unprecedented setoffs of five and four years despite having given him progressively shorter setoffs, including as short as one year, prior to his participation in these lawsuits.

## STATEMENT OF THE CASE

At issue in this appeal is whether the United States Parole Commission ("USPC" or the "Commission"), under the guise of applying the parole criteria in the 1987 Regulations of the District of Columbia Board of Parole (the "Board"), can apply its own unwritten parole criteria, definitions, and practices to determine Plaintiffs' parole suitability where doing so creates a significant risk of increasing Plaintiffs' incarceration when compared to applying the parole criteria, definitions, and practices in effect when Plaintiffs committed the crimes for which they are

incarcerated.  In *Sellmon v. Reilly*,[4] the Honorable Ellen Segal Huvelle found that the Commission's retroactive application of its own 2000 Guidelines, instead of the Board's 1987 Regulations (and a 1991 policy guideline defining terms in those regulations (the "1991 Policy Guideline")), violated the *Ex Post Facto* Clause rights of certain individuals convicted of violating the District of Columbia Code ("D.C. Code offenders") after the Board published its 1987 Regulations.[5]  Judge Huvelle ruled that the 2000 Guidelines were facially distinct from the 1987 Regulations and certain of the *Sellmon* plaintiffs had demonstrated that the USPC had significantly increased the risk of prolonging their incarceration by applying the 2000 Guidelines.[6]

In *Sellmon*, Judge Huvelle also addressed *Ex Post Facto* Clause claims by certain D.C. Code offenders, including Plaintiff James Gambrell, to whom the Commission asserted that it had applied the 1987 Regulations and not the 2000 Guidelines.[7]  Defendants argued in *Sellmon*, as they did in the court below and as the court below appears to have accepted,[8] that the plaintiffs could not state an *ex post facto* challenge because "the USPC expressly stated that it considered the

---

[4] *See Sellmon v. Reilly*, 551 F. Supp. 2d 66 (D.D.C. 2008), *aff'd, Phillips v. Fulwood*, 616 F.3d 577 (D.C. Cir. 2010).

[5] *See id.* at 92-93 (plaintiff Smith), 94 (plaintiff Martin).

[6] *See id.*

[7] *See id.* at 95-96.

[8] *See Gambrell v. Fulwood*, 950 F. Supp. 2d 109, 123-24 (D.D.C. 2013).

1987 Regulations in making its determination."[9]  Judge Huvelle, however, rejected this argument, noting that the protections of the *Ex Post Facto* Clause "would be rendered meaningless if they did not apply in cases where the rules had not yet been formally changed, but the actual practices reflected a revision of the rules from those that governed at the time the prisoner committed the offense."[10]

After comparing the unwritten parole criteria, definitions, and practices applied by Defendants to the 1987 Regulations and 1991 Policy Guideline, Judge Huvelle ruled that Defendants had violated the *Ex Post Facto* Clause by applying a "new factor" that "had the practical effect of substantially increasing" the plaintiffs' "risk of lengthier incarceration."[11]  Although the Commission initially filed a Notice of Appeal challenging the *Sellmon* decision, it withdrew that appeal before briefing commenced.[12]

Following the *Sellmon* decision, the Commission agreed to apply the 1987 Regulations to certain D.C. Code offenders, including Plaintiffs in this case.[13] After each Plaintiff's subsequent parole hearing, however, the Commission, while representing that it applied the 1987 Regulations and 1991 Policy Guideline, has

---

[9] 551 F. Supp. 2d at 96.

[10] *Id.*

[11] *Id.* at 96, 98-99.

[12] *See* Order, *Sellmon v. Reilly*, No. 08-5408 (D.C. Cir. filed Jan. 29, 2009).

[13] *See* First Am. Compl. ¶¶ 66, 73, 81, 91.

applied its own inconsistent and arbitrary definitions and criteria (and not those of the D.C. Board) to determine the applicability of the terms and factors in the 1987 Regulations.[14]  As Plaintiffs' First Amended Complaint alleged, the Commission has created a significant risk of increasing Plaintiffs' punishment in violation of the *Ex Post Facto* Clause by ignoring the Board's definitions and criteria for the terms and factors in the 1987 Regulations and creating and applying its own unwritten and arbitrary definitions and criteria.[15]

The court below, nevertheless, dismissed Plaintiffs' First Amended Complaint on a motion to dismiss.[16]  The court determined that if the Commission, instead of adopting its own "specific set of guidelines" as it did in 2000, made *ad hoc* "interpretations" of the 1987 Regulations using its own criteria, definitions, and practices, there would be "no second parole regime" to which the court could compare the 1987 Regulations.[17]  As a result, the court below held that Plaintiffs could not establish a significant risk of increased punishment in violation of the *Ex Post Facto* Clause.[18]

---

[14] *See* First Am. Compl. ¶¶ 68-71, 75-78, 82-89, 92-96.

[15] *See id.* ¶¶ 112-19.

[16] 950 F. Supp. 2d at 112.

[17] *Id.* at 123.

[18] *Id.* ("Here, there is no second parole regime from which the Court can conduct a 'searching comparison' in order to determine whether there is an ex post facto violation.").

The court below further determined that the Commission could interpret the 1987 Regulations in any fashion it deemed appropriate because Congress vested the USPC with the authority to amend or supplement the regulations interpreting or implementing the D.C. parole laws.[19]  The court below held that, as long as the Commission was interpreting the same D.C. guidelines as the Board interpreted when it made decisions before it was abolished, Plaintiffs' claims amounted to nothing more than a complaint that the Commission was exercising its discretion more harshly than the Board did.[20]

The *Ex Post Facto* Clause, however, forbids retroactive changes to parole standards that create a substantial risk of prolonging Plaintiffs' punishment, and as Judge Huvelle recognized in the *Sellmon* decision, the Commission cannot avoid the restrictions of the Clause simply by not adopting official interpretations and giving lip service to the 1987 Regulations.[21]  As Plaintiffs' First Amended Complaint alleged, the Defendants ignored the 1991 Policy Guideline's definitions

---

[19] *See id.* at 124 ("[T]he fact that a parole authority may interpret the parole guidelines in a stricter fashion than a prior parole authority is not an *ex post facto* violation, as long as the parole authority acts within its discretion.  Moreover, the Revitalization Act itself vests the Commission with the 'exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons . . . .'" (internal citations omitted)).

[20] *See id.*

[21] *See Sellmon*, 551 F. Supp. 2d at 96.

of the parole factors in the 1987 Guidelines and applied their own definitions.[22]  By

ignoring those definitions and applying their own, Defendants created a *de facto*

second parole regime that when compared to the 1987 Guidelines and 1991 Policy

Guideline creates a significant risk of increasing Plaintiffs' punishment.  Plaintiffs

filed a timely notice of appeal to this Court.[23]

Also at issue in this appeal is the district court's dismissal of Plaintiff James

Gambrell's claims against Defendants asserting a violation of his First Amendment

rights.[24]  In the First Amended Complaint, Mr. Gambrell alleged that Defendants

acted vindictively and retaliated against him when they denied his parole requests

following his participation in the *Sellmon* case and in the case below.[25]

Mr. Gambrell alleged that since becoming eligible for parole in 1998, Defendants

had given him progressively shorter setoffs, including as short as one year.[26]  This

trend of shorter setoffs ended after he joined in the *Sellmon* case in 2006, when, in

2007, Defendants gave him a five-year setoff based on a parole factor that he

successfully challenged in 2008, after which Defendants effectively reinstated their

---

[22] *See* First Am. Compl. ¶¶ 70, 76, 84-86, 92-96.

[23] Notice of Appeal at 1, *Gambrell v. Fulwood*, C.A. No. 11-626 (BJR) (D.D.C. filed July 26, 2013); *see* Fed. R. App. P. 4(a)(1)(B).

[24] *See* 950 F. Supp. 2d at 121-23.

[25] *See* First Am. Compl. ¶¶ 41-64.

[26] *See id.* ¶¶ 44-49.

impermissible five-year setoff by giving Mr. Gambrell a four-year setoff.[27]

Mr. Gambrell alleged that the Defendants' increase in the setoff period from his

2006 one year setoff to effectively a five year setoff (the one year he served of the

illegal 2007 setoff plus the four-year setoff Defendants gave him in 2008)

following his participation in the *Sellmon* case established a presumption that

Defendants had acted vindictively in denying his 2008 request for parole.[28]

     The court below, however, ruled that the correct comparison for determining

whether Defendants increased Mr. Gambrell's punishment was between the 2008

four-year setoff and the Defendants' illegal 2007 five-year setoff.[29]  Because

Defendants, in their 2008 decision, did not extend Mr. Gambrell's setoff past the

time they had given him in their illegal 2007 decision, the court below held that

Mr. Gambrell could not demonstrate that Defendants increased his punishment.[30]

     The court below further held that Mr. Gambrell had failed to plead sufficient

facts to establish that Defendants violated his First Amendment rights by

retaliating against him.[31]  The court, again comparing the Defendants' 2008 setoff

decision to the 2007 decision that the *Sellmon* court ruled unconstitutional, held

---

[27] *See id.* ¶¶ 53-55, 59-60, 62-63.

[28] *See id.* ¶¶ 62-63.

[29] *See* 950 F. Supp. 2d at 122.

[30] *See id.* at 121-23.

[31] *See id.* at 123.

that Mr. Gambrell had failed to show an increase in his punishment in 2008, and as a result could not demonstrate causality between his successful challenge in *Sellmon* and the 2008 setoff decision.[32]

As discussed in the Argument below, the court below erred when it determined that Defendants' illegal 2007 decision giving Mr. Gambrell a five-year setoff based on an impermissible factor is the appropriate comparison for determining whether Defendants' 2008 decision increased Mr. Gambrell's punishment following his participation in the *Sellmon* case.  Instead, given the progressively shorter setoffs Mr. Gambrell had received prior to the Defendants' consideration of an improper factor in 2007 and the lack of any intervening activities other than Mr. Gambrell's participation in *Sellmon*, the correct comparison was between the Defendants' 2008 decision (a four-year setoff) and the 2006 decision (a one-year setoff).

## STATEMENT OF FACTS

At the time Plaintiffs committed the offenses for which they are now imprisoned, parole decisions for D.C. Code offenders were made by the Board.[33] The Board's policy at that time was to presume that the sentencing court's minimum sentence addressed all offense accountability (i.e., punishment)

---

[32] *See id.*

[33] *See* First Am. Compl. ¶¶ 23, 41, 65, 80, 90.

considerations related to an offense and that the parole determination was greatly

influenced by rehabilitation and institutional adjustment.[34]  In 1987, the Board

adopted parole regulations "to 'structure the exercise of the paroling authority's

discretion' and to promote 'increased consistency in parole release decisions and

enhanced accountability of the Board' by making '*explicit* those factors that will be

considered in each case.'"[35]  As the district court in *Sellmon* recognized,

> In formulating the [1987] Regulations, the Board was guided by
> three principles:  (1) "the touchstone of the parole decision-
> making process should be based on offender characteristics that
> have a statistically determined bearing on the offender's risk of
> future involvement in criminal behavior;" (2) "the court should
> address[] the purposes of retribution and general deterrence
> through the sentence it imposes . . ." and the Board "will not
> function in a manner that might be viewed as the usurpation of
> the functions of the sentencing judge;" and (3) "in determining
> the factors to be used in assessing the guidelines, consideration
> should be given to their fairness as well as to their statistical
> reliability."[36]

Under the D.C. parole provisions in effect when the Board adopted the 1987

Regulations, a D.C. Code offender became eligible for parole after he or she served

the minimum sentence imposed by the sentencing court for his or her crime.[37]

With the 1987 Regulations, the Board sought to "formalize the manner in which

---

[34] *See Sellmon*, 551 F. Supp. 2d at 70.

[35] *Sellmon*, 551 F. Supp. 2d at 69 (quoting Report on the Development of the
Paroling Policy Guidelines for the District of Columbia Board of Parole ("1987
Regulations Report") at 1-2) (emphasis in the original).  The 1987 Regulations
Report, of which the court below took judicial notice, can be found as Exhibit 1 to
the Plaintiffs' Joint Statement of Undisputed Material Facts in *Sellmon v. Reilly*,
No. 06-cv-01650-ESH, Docket Entry 46-2 (D.D.C. filed Dec. 14, 2007).

[36] *Sellmon*, 551 F. Supp. 2d at 69 (quoting 1987 Regulations Report at 3-4).

[37] *Id.*

the Board exercises discretion conferred upon it" under then D.C. Code § 24-204,[38] "by making 'explicit those factors that will be considered in each individual case.'"[39]  In the 1987 Regulations, the Board adopted a formal process to determine whether an offender was entitled to a presumption that he or she was suitable for parole.  In this process, the Board calculated a "salient factor score" for an offender, and then evaluated pre-incarceration and post-incarceration conduct to calculate a "total point score."[40]  If an offender's total point score was 0, 1, or 2 at his or her initial parole hearing or 0, 1, 2, or 3 at his or her parole rehearing, the Regulations deemed the offender to be presumed suitable for parole.[41]  The Board, however, could overcome the presumption created by the total point score when "'unique'"[42] or "unusual circumstances" existed.[43]

Appendix 2-1 to the 1987 Regulations identified six "pre-incarceration factors that, if applicable, demonstrated that [a parole] candidate was a greater risk for parole than reflected by his or her total point score."[44]  These factors include:

> (1) the offender repeatedly failed under parole supervision;
> (2) the current offense involved ongoing criminal behavior;

---

[38] *Davis v. Henderson*, 652 A.2d 634, 636 (D.C. 1995).

[39] *Sellmon*, 551 F. Supp. 2d at 69 (quoting 1987 Regulation Report at 1-2).

[40] *Id.* at 70-71.

[41] *Id.* at 71.

[42] *Id.* at 71 (quoting 1987 Regulations Report at 22).

[43] D.C. Mun. Regs. tit. 28, § 204.22 (1987) (repealed Aug. 5, 2000).

[44] *Sellmon*, 551 F. Supp. 2d at 71.

11

(3) the offender had a lengthy history of criminally related alcohol abuse; (4) the offender had a history of repetitive sophisticated criminal behavior; (5) the offender had an unusually serious prior record of at least five felony convictions; and (6) the offender's crime involved unusual cruelty to victims.[45]

In 1991, the Board adopted the 1991 Policy Guideline, which defined terms used in the 1987 Regulations, including the pre-incarceration factors that the Board considered as possible "unusual circumstances."[46]  The Board intended the 1991 Policy Guideline "to ensure consistent and equitable application of the 1987 Regulations."[47]

The 1991 Policy Guideline defined the "unusual circumstances" relevant to this appeal that could countervail a presumption of parole suitability as follows:

**Ongoing Criminal Behavior** consists of:

a.  Poor community adjustment as evidenced by failure to remain free of criminal activity over sustained periods of time; <u>or</u>

b.  Acting in a leadership role in an organized, criminal venture . . . ; <u>or</u>

c.  A criminal record where the current conviction is at least the third (3rd) conviction for substantially similar offenses, OR at least the fourth (4th) conviction for dissimilar offenses.

. . .

**Instant Offense Involved Unusual Cruelty to Victims** may apply where the offense involved:

---

[45] *Id.* (citing D.C. Mun. Regs. tit. 28, app. 2-1).

[46] *Sellmon*, 551 F. Supp. 2d at 72.  The 1991 Policy Guideline is attached as Exhibit 2 to the First Amended Complaint in this case.

[47] *Sellmon*, 551 F. Supp. 2d at 71.

a.  Physical, mental or emotional abuse beyond the degree needed to sustain a conviction on the instant offense; <u>or</u>

b.  Especially vulnerable victims, <u>e.g.</u>, children or elderly persons were the victims of assaultive or fraudulent behavior.[48]

In 1997, Congress abolished the Board when it enacted the National Capital Revitalization and Self-Government Improvement Act (the "Revitalization Act").[49] The Revitalization Act directed the Commission to conduct parole hearings for D.C. Code offenders "pursuant to the parole laws and regulations of the District of Columbia."[50]  Since August 5, 1998, the Commission has conducted the hearings and decided the parole requests for all D.C. Code offenders.[51]

Before the *Sellmon* decision, the Commission asserted that it would apply the 1987 Regulations to D.C. Code offenders, like Mr. Gambrell, who received an initial parole hearing prior to August 5, 1998.[52]  For D.C. Code offenders who became eligible for parole after August 5, 1998, like Messrs. Easton, Shakir, Dunn, and Carr, the Commission had promulgated its own parole regulations – the 2000 Guidelines.[53]  In *Sellmon*, however, the district court determined that the Commission's 2000 Guidelines, as applied to certain plaintiffs in that case,

---

[48] First Am. Compl. Ex. 2 at 6-7.

[49] *See Sellmon*, 551 F. Supp. 2d at 68 (citing Pub. L. No. 105-33, § 11231, 111 Stat. 712, 734-37 (codified at D.C. Code §§ 24-101 *et seq.*)).

[50] *Id.*

[51] *Id.*

[52] *See* 28 C.F.R. § 2.80(a)(4) (2011).

[53] *See Sellmon*, 551 F. Supp. 2d at 72.

13

violated the *Ex Post Facto* Clause.[54]  Following the *Sellmon* decision, Defendants have purported to apply the 1987 Guidelines to D.C. Code offenders like Plaintiffs in this case.[55]

Defendants, however, while asserting, as they did in *Sellmon*,[56] that they are applying the 1987 Regulations, have denied Plaintiffs' requests for parole at each hearing Defendants have conducted since the *Sellmon* decision.  Following James Gambrell's July 2008 parole rehearing, Defendants denied Mr. Gambrell's request for parole on the ground that the unusual circumstance of "ongoing criminal behavior" allegedly applied.[57]

On June 21, 2010, Defendants denied Mr. Easton's request for parole on the ground that the unusual circumstance of "unusual cruelty to victims" allegedly applied.[58]  On June 24, 2010, Defendants denied Mr. Shakir's request for parole on the ground that the unusual circumstance of "ongoing criminal behavior" allegedly

---

[54] *See id.* at 92, 94.

[55] *See* First Am. Compl. ¶¶ 66, 73, 81, 91.

[56] *See* 551 F. Supp. 2d at 95.

[57] First Am. Compl. Ex. 3.  While Defendants' motion to dismiss was pending in the court below, the USPC conducted another parole hearing for Mr. Gambrell, following which, on January 31, 2013, it denied his request because of his "history of violent crimes in the community, including the instant offense (murder) in which demonstrated cruelty to your victim while on parole."

[58] First Am. Compl. Ex. 4.  While Defendants' motion to dismiss was pending in the court below, the USPC conducted another parole hearing for Mr. Easton, following which, on May 9, 2013, it denied his request because of the "extreme cruelty [he] demonstrated in murdering a defenseless victim during the course of a robbery" and his "callous actions of targeting a victim for robbery and then murdering him after he relinquished his money."

applied.[59]  On July 14, 2010, Defendants denied Mr. Dunn's request for parole on

the ground that the unusual circumstance of "ongoing criminal behavior" allegedly

applied.[60]  On September 12, 2011, Defendants denied Mr. Carr's request for

parole on the ground that his "wonton disregard for human life and the fact that

[he] committed repetitive robberies and homicides within a short period of time"

allegedly indicated a high risk that he would commit "further crimes if released on

parole."[61]  As Plaintiffs alleged in the First Amended Complaint, none of the

unusual circumstances identified by Defendants in denying Plaintiffs' requests for

parole, however, met the Board's definitions of those circumstances in the 1987

Regulations and 1991 Policy Guidelines.[62]

     The court below, on Defendants' motion to dismiss, held that Plaintiffs

could not establish their *Ex Post Facto* Claims because Plaintiffs allegedly did "not

offer any proof and d[id] not allege that the Commission applied any other specific

set of guidelines that is different from the guidelines previously applied by the

D.C. Parole Board."[63]  Further, the court held that "for each Plaintiff, the

Commission used the scoring system and relied on the appropriate factors to

---

[59] First Am. Compl. Ex. 5.

[60] First Am. Compl. Ex. 6.

[61] First Am. Compl. Ex. 7.

[62] *See* First Am. Compl. ¶¶ 68-71, 75-78, 82-89, 92-96.

[63] 950 F. Supp. 2d at 123-24.

explain its parole decisions."[64]  The court characterized Plaintiffs' argument as

essentially asserting that "when compared to the D.C. Parole Board's interpretation

of the D.C. Guidelines, the Commission's interpretation of the same D.C.

Guidelines caused a significant risk of prolonging their incarceration."[65]  In

concluding that Plaintiffs could not establish an *Ex Post Facto* Claim, the court

below held that "the Commission has vast discretion in parole decisions," and "it

may even deny parole for a reason outside of the enumerated pre-discretion

factors."[66]

    The court below also dismissed Mr. Gambrell's claims alleging that

Defendants violated his First Amendment rights by vindictively denying his 2008

request for parole in retaliation for his successful challenge of their use of an

improper factor in denying his 2007 parole request.[67]  In the First Amended

Complaint, Mr. Gambrell alleged that, as the *Sellmon* court recognized, he had

received progressively shorter setoffs between his parole hearings until 2007.[68]

Following its 2006 parole determination, at which Defendants gave Mr. Gambrell a

---

[64] *Id.* at 124.

[65] *Id.*

[66] *Id.*

[67] *See id.* at 121-23.

[68] *See* First Am. Compl. ¶¶ 46, 47, 48, 53, 62; *Sellmon*, 551 F. Supp. 2d at 97 ("The USPC denied Gambrell parole at each of his prior rehearings for identical reasons and g[ave] him progressively shorter set-offs each time.").

one-year setoff to allow him to complete an institutional program,[69] Mr. Gambrell

joined other plaintiffs in challenging the USPC's parole decisions in the *Sellmon*

case in 2006.[70]  In 2007, after Mr. Gambrell joined in the *Sellmon* complaint and

completed his one-year setoff, Defendants again denied his request for parole and

gave him a five-year setoff.[71]

In the *Sellmon* decision, Judge Huvelle held that Mr. Gambrell had

established a prima facie case that the Defendants violated the *Ex Post Facto*

Clause by improperly basing their 2007 denial of Mr. Gambrell's parole request,

and their issuance of a five-year setoff, on a factor that the 1987 Regulations did

not consider in determining parole suitability.[72]  Judge Huvelle held that "[g]iven

that the reasons for denying parole in the Notice of Action were no different at the

fourth rehearing than they were at any of the prior rehearings, it is clear that the

impermissible application of the federal accountability standard to Gambrell's case

significantly increased his risk of lengthier incarceration."[73]  As a result, Judge

Huvelle ordered Defendants to conduct a new parole rehearing for Mr. Gambrell.[74]

---

[69] *See* First Am. Compl. ¶¶ 48-49.

[70] *See* Am. Compl., *Sellmon v. Reilly*, No. 06-cv-01650-ESH, Docket Entry 4 (D.D.C. filed Nov. 15, 2006).

[71] *See* First Am. Compl. ¶ 53.

[72] *See Sellmon*, 551 F. Supp. 2d at 97.

[73] *Id.*

[74] *See id.* at 99.

Despite Judge Huvelle's decision invalidating Defendants' 2007 decision setting off Mr. Gambrell's parole rehearing for five years, after his 2008 special reconsideration hearing, Defendants again denied Mr. Gambrell's parole request.[75] Then, relying on the very decision Judge Huvelle invalidated, Defendants gave Mr. Gambrell a four-year setoff to correspond with the timing established by the impermissible 2007 five-year setoff.[76]

In the court below, Mr. Gambrell alleged that he was entitled to a presumption that Defendants acted with vindictiveness in denying his parole request because Defendants had increased his setoff period from one year to five years.  Defendants' imposition of a four-year setoff at his 2008 special reconsideration hearing

## SUMMARY OF ARGUMENT

The Constitution's *Ex Post Facto* Clause[77] forbids retroactive changes to parole standards that create a substantial risk of prolonging incarceration, whether those changes are effected through formal, written statutory changes or by simple practice.  Here, Plaintiffs' complaint alleged that the Defendants, under the guise of applying the 1987 Regulations, in fact, created their own unwritten and

---

[75] *See* First Am. Compl. ¶ 59 & Ex. 3.

[76] *See id.*

[77] *See* U.S. Const. art. I, § 9, cl. 3.

18

undefined criteria on which they based their denial of Plaintiffs' parole requests. Plaintiffs' complaint further alleged that the Defendants' unwritten and undefined criteria were inconsistent with the Board's parole guidelines and practices, as documented in the 1987 Regulations and 1991 Policy Guideline. Therefore, the practical effect of Defendants' practice of using their own definitions and criteria to determine the applicability of the unusual circumstances of "ongoing criminal behavior" and "unusual cruelty to the victim" (instead of those in the 1991 Policy Guideline) was to create a substantial risk of prolonging Plaintiffs' incarceration.

As discussed in greater detail below, the district court's determination that the Commission "applied the same D.C. Guidelines previously published and applied by the D.C. Parole Board" and that the Commission essentially had unfettered discretion to "deny parole for a reason outside" of the 1987 Regulations is erroneous.[78] Moreover, the court erred in holding that Plaintiffs had failed to allege or prove the existence of a "second parole regime" that, compared to the 1987 Regulations and 1991 Policy Guideline, demonstrated that the *ad hoc*, unwritten, and arbitrary criteria used by the Commission created a significant risk of increasing Plaintiffs' period of incarceration.[79] The lower court's ruling dismissing Plaintiffs' *Ex Post Facto* Claims, therefore, should be reversed.

---

[78] 950 F. Supp. 2d at 123-24.

[79] *Id.* at 123.

19

The court below likewise erred in dismissing Mr. Gambrell's claims that he is entitled to a presumption of vindictiveness because the Defendants increased his punishment after he challenged their decision at his parole hearing and that the increased punishment violated Mr. Gambrell's First Amendment rights.[80]  The court below erroneously compared the four-year set-off Defendants gave Mr. Gambrell after the court-ordered parole hearing following *Sellmon* to the five-year set-off that the *Sellmon* court ruled was, itself, issued in violation of the Constitution, instead of to the one-year set-off that Mr. Gambrell had received before the Defendants applied impermissible parole considerations to his case.[81]

## ARGUMENT

### I.    The District Court Erred in Dismissing Plaintiffs' *Ex Post Facto* Clause Claim

The *Ex Post Facto* Clause of the Constitution prohibits retroactive increases in punishment for a crime after its commission.[82]  The Supreme Court has held that a retroactively applied parole regulation, guideline, or policy violates the *Ex Post Facto* Clause if it creates a "significant risk" of prolonging an inmate's incarceration longer than under the rule in effect when the crime was committed.[83] Determining whether the retroactive application of a new parole regime violates

---

[80] *See* 950 F. Supp. 2d at 121-22.

[81] *See id.* at 122-23.

[82] *See* U.S. Const. art. I, § 9, cl. 3; *Collins v. Youngblood*, 497 U.S. 37, 42-43 (1990).

[83] *Garner v. Jones*, 529 U.S. 244, 255 (2000).

the *Ex Post Facto* Clause requires "a searching comparison" of the two parole regimes.[84]  A party may demonstrate "significant risk" in two ways:  (1) showing facial distinctions between the old and new parole regimes, or (2) through evidence that the agency's discretionary implementation of the new policy results in a longer period of incarceration than under the earlier rule.[85]  But in this Circuit, "[t]he controlling inquiry 'is one of practical effect.'"[86]

Moreover, for purposes of conducting a searching comparison of the parole regimes, the new parole regime does not need to be formalized in a regulation or written policy statement; instead, a court is to look at the paroling authority's statutes, regulations, internal policy statements, and practices.[87]  Thus, to state an *Ex Post Facto* claim, Plaintiffs needed only to allege and demonstrate that the "practical effect" of the Defendants' use of their own definitions and criteria for parole, instead of the definitions and criteria in the 1987 Regulations and 1991 Policy Guideline, created a "substantial risk" of lengthier incarceration.

---

[84] *Fletcher v. Reilly*, 433 F.3d. 867, 879 (D.C. Cir. 2006).

[85] *See Garner*, 529 U.S. at 255.

[86] *Fletcher*, 433 F.3d. at 877 (citation omitted).

[87] *See Garner*, 529 U.S. at 256 (holding that the court of appeals "erred in not considering the Board's internal policy statement" and noting that "policy statements, along with the Board's actual practices, provide important instruction as to how the Board interprets its enabling statute and regulations"); *Sellmon*, 551 F. Supp. 2d at 96 (holding that *Ex Post Facto* "protection would be rendered meaningless if they did not apply in cases where . . . actual practice reflected a revision of the rules from those that governed at the time the prisoner committed his offense").

21

In their First Amended Complaint, Plaintiffs alleged specific facts demonstrating that the Commission, in practice, applied its own definitions and criteria for terms in the Board's 1987 Regulations instead of the Board's definitions and criteria, including the 1991 Policy Guideline, in effect when Plaintiffs committed the offenses for which they are currently incarcerated.[88]  In support of their allegations, Plaintiffs identified specific criteria utilized by the Commission to deny Plaintiffs' requests for parole and alleged how those criteria conflicted with the Board's 1987 Regulations and 1991 Policy Guideline.[89] Plaintiffs further alleged that by applying definitions and criteria that were inconsistent with the Board's 1987 Regulations and 1991 Policy Guideline, Defendants "significantly increased the risk" that Plaintiffs would be incarcerated longer than they would have been had the Board's standards been applied.[90]

Despite the allegations in the First Amended Complaint, the court below held that "there is no second parole regime from which the Court can conduct a 'searching comparison' in order to determine whether there is an *ex post facto* violation."[91]  According to the court below, Plaintiffs had "not offer[ed] any proof" and did "not allege" that "the Commission applied any other *specific set of*

---

[88] *See* First Am. Compl. ¶¶ 114-19.

[89] *See id.* ¶¶ 59, 69-71, 75-78, 82-89, 92-96, 114-19.

[90] *See id.* ¶¶ 114-19.

[91] 950 F. Supp. 2d at 123.

*guidelines* that is different from the guidelines previously applied by the D.C.

Parole Board."[92]  Instead, the court accepted Defendants' bald assertion that the

Commission "applied the same D.C. Guidelines previously published and applied

by the D.C. Parole Board."[93]  Moreover, the district court characterized Plaintiffs'

*ex post facto* argument as amounting to Plaintiffs' mere disagreement with the

Commission's exercise of discretion in interpreting the 1987 Regulations, which

the court held could not support an *Ex Post Facto* Clause claim "as long as the

parole authority acts within its discretion" – "the fact that a parole authority may

interpret the parole guidelines in a stricter fashion than a prior parole authority is

not an *ex post facto* violation."[94]  Because the court found that the Commission had

"vast discretion in parole decisions," including the discretion under the

Revitalization Act to "'amend or supplement any regulation interpreting or

implementing the parole laws of the District of Columbia with respect to felons,'"

the district court held that "the Commission's discretion is such that it may even

deny parole for a reason outside of the enumerated pre-discretion factors."[95]

     As demonstrated below, the district court's decision includes critical legal

errors that warrant reversal.  First, in evaluating whether a change in a parole

---

[92] *Id.* (emphasis added).

[93] *Id.* at 123-24.

[94] *Id.* at 124.

[95] *Id.* at 124 (quoting Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 251).

regime implicates the protections of the *Ex Post Facto* Clause, the district court erroneously limited its inquiry to the parole statute and regulations, instead of also considering the Commission's policy statements and actual practices. As a result, Plaintiffs were not obligated to prove or allege the existence of "a specific set of guidelines" and could establish a "second parole regime" by demonstrating practices inconsistent with the earlier parole regime. Second, although the Commission, like the Board before it, has discretion in making parole decisions, that discretion, as the *Sellmon* court recognized is not unfettered.

A. The *Ex Post Facto* Clause Inquiry Applies Equally to the Commission's Practices as to the Statutes and Regulations the Commission Applies

As the Supreme Court of the United States recognized in *Garner v. Jones*, the *Ex Post Facto* Clause inquiry requires an evaluation of not only the "enabling statute and regulations" of a paroling authority, but also of the authority's "policy statements" and "actual practices."[96] Judging the Commission's actions simply by its words and ignoring its actual practices would "render[] meaningless" the protections of the *Ex Post Facto* Clause, and "Defendants may not avoid a constitutional challenge simply by citing the correct rules, while in fact following" their own practices.[97]

---

[96] *Garner*, 529 U.S. at 256.

[97] *Sellmon*, 551 F. Supp. 2d at 96 (citing *Cosgrove v. Thornburgh*, 703 F. Supp. 995 (D.D.C. 1988)).

24

Thus, the district court erred when it held that Plaintiffs had not offered proof or alleged that the USPC applied parole criteria that differed "from the guidelines previously applied by the D.C. Parole Board."[98]  Instead of searching for allegations of a "specific set of guidelines," the district court should have looked at whether, as Plaintiffs alleged in their First Amended Complaint, the Commission had, either through regulation, policy, or practice, applied criteria or definitions that, when compared to the criteria and definitions in the D.C. Parole Board's 1987 Regulations and 1991 Policy Guideline, created a significant risk of lengthening Plaintiffs' incarceration.  Because Plaintiffs' First Amended Complaint identified specific factors for which the Commission created its own definitions and criteria that were inconsistent with the definitions and criteria of the Board's 1991 Policy Guideline,[99] the lower court should not have dismissed Plaintiffs' *Ex Post Facto* Clause claim.

> B.     As the *Sellmon* Court Recognized, the Commission's Discretion in Parole Decisions Is Not Unfettered

In addition to dismissing Plaintiffs' *Ex Post Facto* Clause claim on the basis that Plaintiffs allegedly had failed to show that Defendants had applied a different parole regime, the district court held that because the Commission had "vast discretion" under the 1987 Regulations, it could "deny parole for a reason outside

---

[98] 950 F. Supp. 2d at 123-24.

[99] *See* First Am. Compl. ¶¶ 59, 69-71, 75-78, 82-89, 92-96, 114-19.

of the enumerated pre-discretion factors."[100]  Recognizing that Congress had

granted the Commission the "'exclusive authority to amend or supplement'" the

D.C. parole regulations, the court below held that "even if Plaintiffs were able to

show that the Commission interpreted the factors more broadly or harshly than the

D.C. Parole Board, this would not amount to an *ex post facto* violation."[101]  Thus,

the court essentially held that even if the Commission reinterpreted the factors

under the 1987 Regulations in a manner wholly inconsistent with those regulations,

Plaintiffs' *Ex Post Facto* Clause claims would fail.

The district court's decision, however, cannot be reconciled with the

Supreme Court's ruling in *Garner* that "[t]he presence of discretion does not

displace the protections of the *Ex Post Facto* Clause,"[102] or with the *Sellmon*

court's decision, which the USPC elected not to appeal.  In *Sellmon*, Judge Huvelle

found that the Commission violated the *Ex Post Facto* Clause when it applied

"reasons outside of the enumerated factors" in the 1987 Regulations to deny parole

and establish setoff periods.[103]  As Judge Huvelle recognized, the 1987 Regulations

---

[100] 950 F. Supp. 2d at 124.  Although the district court's opinion refers to "pre-discretion factors," Plaintiffs believe the court intended to refer to the "pre-incarceration" factors that Plaintiffs' First Amended Complaint asserted narrowed the bases on which the Board (and, therefore, the Commission) could exercise its discretionary decision making.

[101] *Id.*

[102] 529 U.S. at 253.

[103] 551 F. Supp. 2d at 96 (holding that "offense accountability" "was not a legitimate rationale for departing from the action indicated by the base point

and 1991 Policy Guideline, although not mandating the grant of parole, narrowed the focus of the Board's (and, as a result, the Commission's) discretion with respect to the factors addressed in those regulations and policy guideline.[104]  Thus, the Commission cannot, through practice, re-define the criteria in effect when Plaintiffs committed their crimes  in a manner that creates a significant risk of increasing the length of Plaintiffs' incarceration, as Plaintiffs' First Amended Complaint alleges the Commission has done.

## II.    The District Court Erred in Dismissing Mr. Gambrell's Vindictive Prosecution and First Amendment Claims

Due process forbids a court from imposing a tougher sentence on a defendant after a retrial following a successful appeal than the defendant received after the initial trial.[105]  Moreover, the First Amendment precludes the USPC from retaliating against an inmate for successfully challenging the Commission's

---

score"); *id.* at 94 (granting summary judgment because "the reason on which the USPC based its departure . . . would not have justified a departure under the 1987 Regulations").

[104] *See id.* at 96 n.34 (recognizing that the plaintiffs did not challenge the Commission's discretionary determinations; rather they challenged the Commission's ability to use certain criteria that were inconsistent with the parole practices in effect when the plaintiffs committed their crimes in making its discretionary determinations); *see also Cosgrove v. Thornburgh*, 703 F. Supp. 995, 1003 (D.D.C. 1988) ("[W]hile the [1987 Regulations] do not produce a formula for determining parole suitability, leaving room for the exercise of individual discretion, they 'help focus the decision-maker's attention on the Board-approved criteria.  They thus narrow his field of vision . . . .'" (citation omitted)).

[105] *See Marshall v. Lansing*, 839 F.2d 933, 947 (3d Cir. 1988) (citing *North Carolina v. Pearce*, 395 U.S. 711, 723-25 (1969)).

27

decision making.[106]  In circumstances where a tougher sentence is imposed

following an inmate's successful challenge to an earlier sentence, the courts have

applied a "presumption of vindictiveness" that "'may be overcome only by

objective information in the record justifying the increased sentence.'"[107]

Federal courts, including the District of Columbia Court of Appeals, have

extended this "presumption of vindictiveness" to parole determinations and have

held that a paroling authority cannot penalize an inmate for successfully

challenging the parole authority's decisions.[108]  Thus, where the Commission

applies a "harsher sentence – here, the longer set-off –" in response to an inmate's

successful challenge to one of the Commission's earlier decision, the presumption

of vindictiveness arises and "'the burden shifts to the government to rebut that

presumption'" using "'factual data'" in the record that "must reflect 'objective

---

[106] *See Garcia v. Dist. of Columbia*, 1998 U.S. Dist. LEXIS 22130, at *10-11 (D.D.C. 1998); *Byrd v. Moseley*, 942 F. Supp. 642, 644 (D.D.C. 1996); *cf. Hammonds v. D.C. Bd. of Parole*, 756 A.2d 896, 898 (D.C. Cir. 2000); *Caldwell v. Brown*, No. 98-0460, 2003 U.S. Dist. LEXIS 27942 (D.D.C. Sept. 29, 2003).

[107] *Hammonds*, 756 A.2d at 898 (quoting *United States v. Goodwin*, 457 U.S. 368, 374 (1982)); *see Caldwell v. Brown*, No. 98-0460, 2003 U.S. Dist. LEXIS 27942 (D.D.C. Sept. 29, 2003).

[108] *See Marshall*, 839 F.2d at 947 ("Just as a sentencing judge might resent a challenge to an underlying conviction which he himself had overseen, so too might the Commission look unkindly upon a successful court challenge to its rating of a prisoner's offense severity, thus supplying a motive for retaliation."); *Hammonds*, 756 A.2d at 899 ("We are convinced by the logic of those courts that have applied the Pearce presumption in parole cases. . . .").

information concerning the identifiable conduct on the part of [the parolee] occurring after the time of the original . . . proceeding.'"[109]

In the First Amended Complaint, Mr. Gambrell pleaded sufficient allegations to demonstrate that he is entitled to a presumption of vindictiveness regarding the Commission's June 2008 decision to impose a four-year setoff, in contrast to the one-year setoff given in 2006, before he participated in the *Sellmon* case.[110] The court below, however, ruled that Mr. Gambrell made the wrong comparison for purposes of a "vindictive prosecution" analysis: rather than compare the USPC's decisions of July 2006 and July 2008, the court held that the proper comparison was between the USPC's August 2007 five-year setoff and July 2008 four-year setoff. The court held that because the Commission's parole decision in the July 2008 rehearing was not harsher than the unconstitutional August 2007 decision, Mr. Gambrell could not "establish a presumption of vindictiveness."[111] As demonstrated below, the court erred because the proper comparison for purposes of the vindictiveness analysis was of the USPC's 2008 four-year setoff to the prior constitutional USPC determination in 2006, at which the USPC gave Mr. Gambrell a one-year setoff.

---

[109] *Hammonds*, 756 A.2d at 899-900 (citations omitted) .

[110] *See* First Am. Compl. ¶¶ 41-64.

[111] 950 F. Supp. 2d at 122.

In *Sellmon*, the court ruled that the USPC's August 2007 was unconstitutional because the USPC impermissibly applied the federal accountability standard to Mr. Gambrell's case, which significantly increased his risk of lengthier incarceration.[112]  In fact, the *Sellmon* court pointed out that although the USPC had denied Mr. Gambrell parole at each of his prior rehearings for identical reasons, and given him progressively shorter setoffs each time, it was not until Defendants applied the federal accountability standard that this trend was reversed.  The appropriate comparison is between the 2008 USPC decision, which came after, and as a result of, *Sellmon*, and the 2006 USPC decision, which came before Mr. Gambrell filed suit against the USPC to enforce his constitutional rights.  The USPC's 2007 decision, on the other hand, was issued during the course of the *Sellmon* litigation.

Further evidence of Defendants' vindictiveness is found in the fact that, after Mr. Gambrell's successful lawsuit, the USPC found, for the very first time, a new reason to deny parole and increase the setoff – that Mr. Gambrell's offense represented "ongoing criminal behavior."[113]  While the D.C. Board of Parole had identified "ongoing criminal behavior" in 1998 as one of the factors warranting a decision outside the D.C. Parole Guidelines, the USPC had never identified that particular "unusual circumstance" at any of Mr. Gambrell's prior reconsideration

---

[112] *See* 551 F. Supp. 2d at 97-98; First Am. Compl. ¶ 55.

[113] First Am. Compl. ¶¶ 59, 102.

hearings.[114]  The Commission's arbitrary use of the "unusual circumstance" of "ongoing criminal behavior" against Mr. Gambrell demonstrates the Commission's vindictiveness.

In sum, the court below erred in dismissing Mr. Gambrell's vindictiveness and First Amendment claims because after Mr. Gambrell's successful participation in the *Sellmon* case, the Commission used the exact same setoff period, i.e., a parole rehearing in 2012, that it had given Mr. Gambrell in its 2007 decision, which the *Sellmon* court ruled unconstitutional.  Because the 2007 decision was found to be unconstitutional, the proper comparison for purposes of determining whether the USPC imposed a harsher sentence on Mr. Gambrell is between the 2008 setoff until 2012 and the 2006 one-year setoff.

---

[114] First Am. Compl. ¶ 59.

## CONCLUSION

For the reasons set forth above, Plaintiffs ask the Court to reverse the district court's ruling dismissing their claims under the *Ex Post Facto* Clause and Mr. Gambrell's claims for vindictiveness and under the First Amendment and to remand the case to the district court for further proceedings.

February 6, 2014

                        _/s/Jason D. Wallach_____
                        Jason D. Wallach
                        Dickstein Shapiro LLP
                        1825 I Street NW
                        Washington, DC  20006
                        (202) 420-2200 – Telephone
                        (202) 420-2201 – Facsimile

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and D.C. Circuit Rule 32(a)(7)(C), the undersigned certifies that this Brief complies with the applicable type-volume limitations.  Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and D.C. Circuit Rule 32(a)(2), this brief contains 5716 words (as measured by Microsoft Word, the word-processing program used to prepare the Brief).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

February 6, 2014

__ /s/ Jason D. Wallach____
Jason D. Wallach

## CERTIFICATE OF SERVICE

I hereby certify that I have this 6th day of February, 2014, filed the required copies of the Brief for Appellants James Gambrell, Kenneth Easton, Talib Shakir, William Carr, and James Dunn in the Clerk's Office of the United States Court of Appeals for the District of Columbia, and I further certify that I have sent via United States Mail on the same date the required copies of the Brief:

Alan R. Burch
Assistant United States Attorney
555 4th Street NW
Washington, DC 20530
(202) 252-2523

/s/ Jason D. Wallach
Jason D. Wallach

*Counsel for James Gambrell, Kenneth Easton, Talib Shakir, William Carr, and James Dunn*

1